## CADY et al. v. UNITED STATES.

(Court of Appeals of District of Columbia. Submitted October 4, 1923. Decided November 5, 1923.)

### No. 4011.

1. **Burglary ☞41(4)—Evidence held to support conviction of feloniously entering garage with intent to commit larceny.**

Evidence that the staple holding the lock on prosecuting witness' garage had been pulled, that defendants were in the garage about 7 o'clock in the morning, and when another witness questioned them as to what they were doing they got into a waiting automobile and drove away without making any response, *held* to support a conviction of feloniously entering with intent to commit larceny.

2. **Criminal law ☞753(2)—Verdict directed unless there is substantial evidence excluding every other hypothesis except guilt.**

Unless there is substantial evidence of facts excluding every other hypothesis except guilt, the trial court must direct a verdict for accused.

3. **Criminal law ☞1159(2)—Conviction reversed, evidence being as consistent with innocence as with guilt.**

Where all the substantial evidence is as consistent with innocence as with guilt, a conviction should be reversed.

4. **Burglary ☞28(7)—In prosecution for feloniously entering garage, indictment and evidence held not to show variance as to occupier of the garage.**

That indictment for feloniously entering a garage with the intent to commit larceny alleged the garage was occupied and used by a named person, whereas the evidence showed that it was also occupied and used by another person with the named person's permission, *held* not a variance.

5. **Burglary ☞21—Purpose of requiring indictment to state name of person occupying building.**

The purpose of requiring the indictment to state the name of the person who occupied and used the building entered is to negative defendant's right to break and enter and to protect him from a second prosecution for the same offense.

Appeal from the Supreme Court of the District of Columbia.

William Cady and another were convicted of feloniously entering a garage with intent to commit larceny, and they appeal. Affirmed.

T. Morris Wampler, of Washington, D. C., for appellants.

Peyton Gordon and J. H. Bilbrey, both of Washington, D. C., for the United States.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and BAILEY, Justice of the Supreme Court of the District of Columbia.

SMYTH, Chief Justice. From a conviction of the crime of feloniously entering, with intent to commit larceny, the garage occupied and used by one Edward L. Glenn, the defendants appeal. No evidence was offered by them, but they claim that the case made out by the government was not sufficient to establish their guilt, and that the court erred in not sustaining their motion for a directed verdict. This is the only point presented for our consideration.

[1] At the time of the offense charged Glenn rented a garage located in the rear of 1515 R. Street N. W., Washington, in which he kept his automobile and its accessories. He permitted another person to

occupy the garage with him. On the night before the breaking and entering, about 9 o'clock, he locked the garage and did not see it again until some time the following evening. About 7 o'clock of the morning after he had locked it, the witness Martz, a mechanic, whose shop was located in the neighborhood, but who happened to be near the garage at the time, heard a noise in the vicinity of the garage, and went around the corner to see what had caused it. He found the doors open, the staple which had held the lock and the lock lying on the ground, and three men, two of whom were the defendants, in the garage. As soon as the men saw him, they came out of the garage without closing the doors behind them. Witness asked them if they were going to close the doors. They made no response, but got into a waiting automobile and drove away. This was all the testimony produced.

In the light of it we may inquire: Who pulled the staple and then opened the doors, and with what intent were these things done? Why were the defendants there, and why did they not give some reasons for their presence? Why did they come to the garage in an automobile ready to swiftly carry away tires, tools, etc? Would men bent on an honest mission have acted so? True, they took nothing, but this is immaterial. They were not charged with taking anything, but with the intent to do so. It is said that, since we held in Ambrose v. United States, 45 App. D. C. 112, 123, an embezzlement case, that the mere fact of taking should not raise the presumption of a felonious intent, the mere fact of entering the garage should not have that effect. This is quite right, but not apropos. It ignors the circumstances under which the entry was made. There is much more here than the mere entering.

[2, 3] We are reminded of the well-established and oft-repeated principle that, unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt, it is the duty of the trial court to instruct the jury to return a verdict for the accused, and, where all the substantial evidence is as consistent with innocence as with guilt, it is the duty of the appellate court to reverse a conviction. But it is not applicable here, because the facts established are such that the jury was fully warranted in deducing from them inferences which excluded every other hypothesis but that of guilt.

In People v. Soto, 53 Cal. 415, 416, a person entered a building through a window at a late hour of the night, after the lights were extinguished. No explanation of his intention was given. The court said that it might well be inferred that his purpose was to commit larceny, such being the usual intent under these circumstances. Another case to the same effect is that of Steadman v. State of Georgia, 81 Ga. 736, 737, 8 S. E. 420, in which the accused was charged with attempted burglary. On appeal it was argued that there was not sufficient proof of the intent laid in the indictment. But the court did not agree with this view, and, after calling attention to the fact that there was no other motive than that of the felonious one in sight, said:

"When there is no other reason for breaking into our neighbor's house near the hour of midnight, if we do it at all, we are after his property or his money."

One Shedd was charged with attempting to enter a certain building with intent to steal. There was testimony tending to show that he was seen at night on the piazza of the building; that he left the building when an officer appeared, and took refuge in some hollyhocks in the yard, where he was arrested. When apprehended he was apparently asleep, and he explained to the officer that he had been drinking. He made false and contradictory statements about his name and residence. On investigation it was found that the porch door and three windows of the house were open. The court said the jury might well have found from these circumstances that the breaking was done for the purpose of stealing. Commonwealth v. Shedd, 140 Mass. 451, 453, 5 N. E. 254.

To be sure we have no contradictory statements here, but the failure of the defendants in the circumstances to give any reason for their presence is just as significant. We think the evidence was quite enough to require the case to be submitted to the jury upon the question as to whether they were guilty of breaking and entering with the intent alleged.

[4] The defendants argue that there is a variance between the proof and the indictment, in that they were charged with entering a building occupied and used by Glenn, whereas it appears that, by his permission, it was also occupied by another person. Many cases are cited in support of their contention. We have read them, and we are convinced that none is in point. It is not our purpose to review each. We take only a few typical ones. They are Adams v. State, 13 Ala. App. 330, 69 South. 357, State v. McCray, 189 Iowa, 1239, 179 N. W. 627, People v. Carr, 255 Ill. 203, 99 N. E. 357, 41 L. R. A. (N. S.) 1209, Ann. Cas. 1913D, 864, State v. Burton, 27 Wash. 528, 67 Pac. 1097, and Ullman v. State, 1 Tex. App. 220, 28 Am. Rep. 405.

It was ruled in the Adams Case that the ownership of the premises in an indictment for burglary should be laid, not in the holder of the legal title, but in him who had occupancy or possession when the offense was committed, unless the occupant was a mere servant, in which case the ownership should be laid in the master. The McCray decision holds that in a prosecution for breaking and entering, where the indictment charges that the defendant broke in and entered a store owned by one Simonoff, there is no variance, though the testimony shows that Simonoff was not the legal owner, but a lessee, of the building. And People v. Carr says that an indictment charging that the defendant entered with burglarious intent a certain building, the room of Scharf, in a hotel, was sufficient, although it appeared that Scharf did not own the hotel. State v. Burton and Ullman v. State are to the same effect. A glance at these decisions will show that they have no bearing on the question before us.

On the other hand, there are many authorities which in principle support the proposition that there is no variance in the instant case. In an indictment for burglary, the ownership of the house was alleged to be in one Bullard; the proof established this, but also showed that at the time of the burglary Bullard's son, with the permission of his father, was storing corn in the house. This did not constitute a vari-

ance. Painter v. State, 26 Tex. App. 454, 9 S. W. 774. Defendant was charged with breaking and entering the dwelling house of one Shippee, while the proof showed that Shippee was only a guest in the dwelling entered, an inn. The New York Court of Appeals said that the guest had no interest in the building, but only the use for the time being of the chamber which had been entered; that the legal possession of the room was in the innkeeper, and that in contemplation of law the rooms therein were occupied by the innkeeper, and hence the entering was an offense against his occupancy. Rodgers v. People of the State of New York, 86 N. Y. 360, 40 Am. Rep. 548. Here the person who occupied the garage with Glenn had no interest in it. He was simply a licensee, permitted by Glenn to use it for a time. Bauer v. State, 25 Ohio St. 70, is authority for the proposition that where a defendant is charged with burglary of a building occupied by a person named, and the proof shows that another person used and occupied it in common with the stated owner, there is no variance. In Rex v. Sefton, Russ & Ry. (Eng.) 203, cited with approval by the Supreme Court of Nebraska in Hahn v. State, 60 Neb. 487, 490, 83 N. W. 674, 676, it was said:

"We regard the authorities as uniform in holding that the person inhabiting and in possession, either exclusively or in common with others, and having the general charge and control of such building, will be deemed the owner thereof within the meaning of the criminal law relating to burglary."

The evidence under review tends to show, if it does not clearly establish, that Glenn had general charge and control of the garage. East, in his Pleas of the Crown, p. 500, said a long time ago that:

"Where the legal title to the whole mansion remains in the same person, there, if he inhabit it either by himself, his family, or servants, or even by his guests, the indictment must lay the offense to be committed against his mansion. And so it is, though he let out apartments to inmates, who have a separate interest therein, if they have the same outer door or entrance into the mansion in common with himself."

See, also, 1 Hale's P. C. 557; 1 Hawkins' P. C. 134.

[5] The purpose of the law in requiring the name of the person who occupied and used the building entered to be stated is to negative the defendant's right to break and enter, and to protect him from a second prosecution for the same offense. Adams v. State, supra; State v. Trapp, 17 S. C. 467, 470, 43 Am. Rep. 614. This purpose is sufficiently satisfied where, as in the present case, it is alleged and proved that a person other than the defendant occupied and used the garage when it was entered.

In many of the books nice distinctions are made with respect to what indicates a variance; but we have said in Kemp v. United States, 41 App. D. C. 539, 548, 51 L. R. A. (N. S.) 825, that the old technical rules of pleading in criminal cases, inherited from ancient England, have been greatly relaxed, and have been supplanted by the more recent rule that only material and substantial variances between the pleadings and proofs will be regarded. We think that, according to the

great weight of authority, there was no substantial variance in the case before us.

The judgment must be, and it is, affirmed.

Affirmed.