**Redell INGRAM, a/k/a Melvin Howell, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 10778.

District of Columbia Court of Appeals.

Submitted April 27, 1978.

Decided July 14, 1978.

William H. Kenety, Washington, D. C., appointed by this court, was on brief, for appellant.

Earl J. Silbert, U. S. Atty., John A. Terry, Michael W. Farrell, and Daniel J. Bernstein, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before NEWMAN, Chief Judge, and KERN and YEAGLEY, Associate Judges.

PER CURIAM:

Following a jury trial, appellant was found guilty of second-degree burglary[1] and destruction of property with a value of less than two hundred dollars.[2] On appeal, appellant contends that (1) the trial court erroneously denied his motion for a judgment of acquittal on the ground that a variance existed between the indictment and the government's proof at trial, and (2) that the portion of the indictment which charged him with burglary was fatally defective. We affirm.[3]

1. D.C.Code 1973, § 22–1801(b).

2. D.C.Code 1973, § 22–403.

3. Evidence adduced by the government indicates that an ongoing burglary was promptly reported to the manager of an apartment building and that the manager went immediately to the scene and arrested appellant at gunpoint as he attempted to flee. On rebuttal, the government successfully undermined appellant's explanation of his presence in the apartment during the commission of the offense.

The first count of the grand jury's indictment of appellant charges:

> On or about June 26, 1975, within the District of Columbia, Redell Ingram also known as Melvin Howell entered the apartment of Mt. Airy Baptist Church Housing Corporation, Inc., a body corporate, with intent to steal property of another.

At trial, the prosecution's evidence indicated that Mt. Airy Baptist Church Housing Corporation, Inc., was the legal title holder and landlord of the apartment, while Richard Taylor, a tenant and officer of the corporation,[4] actually occupied and used the premises on the day of the offense. Appellant's first argument is that "in the present case the ownership was clearly laid, wrongly, in title rather than occupancy or possession at the time the crime was committed." Appellant further contends that the government's case was fatally flawed because of the variance within it: "the indictment alleged that Mt. Airy Baptist Church Corporation 'lived' there [in Apartment 837], the proof showed Raymond Taylor did."

A recent decision of this court, *Hackney v. United States,* D.C.App., 389 A.2d 1336 (1978), disposes of appellant's contention that the indictment itself was so defective as to require reversal. In *Hackney v. United States, supra* at 1338, this court upheld a conviction for first-degree murder in the face of a challenge that the indictment was fatally defective because it lacked an allegation of a specific intent to kill. Although this court assumed, arguendo, that the indictment was deficient, it concluded, nevertheless, that reversal was unwarranted since no prejudice to the accused was demonstrated.

Assuming, arguendo, that the indictment in the instant case is defective,[5] application of the rationale enunciated in *Hackney v. United States, supra* at 1340–1341 answers appellant's implicit contention that this defect, without even an allegation, much less a showing, of prejudice, requires reversal. As stated by this court in *Hackney v. United States, supra* at 1341–1342:

> [Although] the essential elements of the crime charged should be alleged in an indictment, the underlying rationale for this holding was to satisfy the constitutional requirement that a defendant be apprised of what he must be prepared to meet. [Citations omitted.] [6] Indeed, one scholar has suggested that the essential element requirement should be read in light of whether it is fair to the defendant to require him to defend on the basis of the charge stated in the indictment. [Citation omitted.] Hence, although the indictment in question is not a model of proper criminal pleading, we do not believe its imperfections are prejudicial. [Footnote omitted.] It does not contain an allegation of specific intent to kill. Its sufficiency must be determined, however, by practical rather than technical considerations . . .. Courts generally give an indictment a common sense construction, . . . and dismiss challenges based on technical inaccuracies or omissions, if the indictment adequately informs the defendant of pending charges. [Citations omitted]. . . . [The indictment here] was sufficient to fairly notify appellant of the charges against him. Moreover, counsel for appellant was aware throughout the pro-

---

4. Richard Taylor, the occupant of Apartment 837, testified that although he had full-time employment elsewhere, he had served as a past secretary of the corporation and, at the time of the offense, was serving as the church's financial secretary. Taylor also stored some of the corporation's records in his apartment.

5. The government contends that, due to the "special relationship" between Richard Taylor and the Mt. Airy Baptist Church Housing Corporation, the indictment was not defective and that no variance occurred since, in a real sense,

both the corporation and Taylor were the occupants of Apartment 837. On the facts of this case, we need not accept or reject this contention, and base our affirmance on the ground that no prejudice accrued to the accused due to any flaw in the indictment or variance between the indictment and proof.

6. *Nichols v. United States,* D.C.App., 343 A.2d 336, 340 (1975). *See Bush v. United States,* D.C.App., 215 A.2d 853, 855 (1966), and the cases cited therein.

ceedings that his client was charged with first-degree murder. No prejudice appearing, such an omission furnishes no ground for finding the indictment defective.

Similarly, there is no allegation here that the indictment failed to fairly apprise appellant of the charges against him or that it prejudiced his defense in any way. *United States v. Pendergrast,* D.C.App., 313 A.2d 103, 104 (1973); *Sams v. District of Columbia,* D.C.App., 249 A.2d 230 (1969).

Appellant's second contention is that a variance existed between the allegations in the indictment and the government's proof at trial since the indictment charged that appellant entered the apartment of the Mt. Airy Baptist Church Housing Corporation, Inc., while the evidence showed that, on the day of the offense, Richard Taylor was in possession and use of the premises.

The general rule that allegations in the indictment and proof at trial correspond stems from the requirements "(1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at trial; and (2) that he may be protected against another prosecution for the same offense. *Bennett v. United States,* 227 U.S. 333, 338, 33 S.Ct. 288, 57 L.Ed. 531 . . ." *Berger v. United States,* 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935); *Barker v. United States,* D.C.App., 373 A.2d 1215, 1218 (1977); and *Gaither v. United States,* 134 U.S.App.D.C. 154, 164–65, 413 F.2d 1061, 1072–73 (1969). The fact that a variance occurred does not automatically result in reversal. Prejudice is required to be shown if reversal is urged on the ground of variance. *Kotteakos v. United States,* 328 U.S. 750, 757, 766, 66 S.Ct. 1239, 90 L.Ed. 1557 (1945); *Berger v. United States, supra,* 295 U.S. at 82, 84, 55 S.Ct. 629; *Barker v. United States, supra* at 1218; *Harris v. United States,* D.C.App., 333 A.2d 397, 400 n. 4 (1975). In *Berger v. United States, supra,* the Supreme Court observed that:

[quoting *Washington & Georgetown Railway Co. v. Hickey,* 166 U.S. 521, 531, 17 S.Ct. 661, 41 L.Ed. 1101 (1897)] "no variance ought ever to be regarded as material where the allegation and proof substantially correspond, or where the variance was not of a character which could have misled the defendant at the trial." This was said in a civil case, it is true, but it applies equally to a criminal case if there be added the further requisite that the variance be not such as to deprive the accused of his right to be protected against another prosecution for the same offense. [*Id.,* 295 U.S. at 83, 55 S.Ct. at 631.]

The rationale which underlies the requirement that the indictment identify the occupant of the premises burglarized has been enunciated in this jurisdiction:

the purpose of the law in requiring the name of the person who occupied and used the building entered is to negative the defendant's right to break and enter, and to protect him from a second prosecution for the same offense. [*Bord v. United States,* 76 U.S.App.D.C. 205, 206, 133 F.2d 313, 314, *cert. denied,* 317 U.S. 671, 63 S.Ct. 77, 87 L.Ed. 539 (1942), *quoting Cady v. United States,* 54 App.D.C. 10, 13, 293 F. 829, 832 (1923).]

In *Bord, supra,* 76 U.S.App.D.C. at 206, 133 F.2d at 314, the accused sought to overturn convictions for housebreaking and larceny on the ground that the identity of the corporate entity occupying the premises in which the offense occurred had not been established. After noting that evidence had been presented regarding the corporate character of the occupant, the court summarily rejected the accused's contentions in language applicable to the claims raised before us in the present appeal:

we do not suggest that failure to prove the identity and corporate character of the occupant would have called for reversal. . . . *Whoever occupied the Savoy Theater, it is obvious that appellant had no right to break and enter it or to remove property from it,* and it was sufficiently identified so that he cannot again be prosecuted for these offenses. [*Bord v. United States, supra* at 206, 133 F.2d at 314 (emphasis added).]

Similarly, in *Cady v. United States, supra,* 54 App.D.C. at 13, 293 F. at 832, the court affirmed a conviction of the crime of feloniously entering a garage with the intent to commit larceny where the indictment indicated the premises were occupied by one person and the proof revealed that this person and another were the actual occupants. The court held that no prejudice resulted from the variance, and that the indictment satisfied the rationale underlying the requirement that the occupant of the burglarized premises be identified; *viz.,* to negate the defendant's right to break and enter and to protect him from a second prosecution for the same offense. *Id.* As stated by the court:

this purpose is sufficiently satisfied where, as in the present case, it is alleged and proved *that a person other than the defendant occupied and used the garage when it was entered.* [*Id.*; emphasis added.]

■ Appellant here does not contend, nor could he, that the variance would permit his reprosecution and conviction for burglary and destruction of property if the present indictment was amended to allege that the occupant of the apartment at the time of the offense was Richard Taylor and not the Mt. Airy Baptist Church Housing Corporation, Inc. Such a procedure would obviously be impermissible on double jeopardy grounds. Moreover, in evaluating any claim of double jeopardy, the entire record would be available to the reviewing court for its evaluation of the offenses for which appellant had been convicted. *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *Bush v. United States,* D.C.App., 215 A.2d 853, 856 (1966).

Neither does appellant contend that had occupancy been laid in Richard Taylor, rather than the corporation, his right to break and enter the premises would not have been negated. *Cady v. United States, supra,* 54 App.D.C. at 13, 293 F.2d at 832. After an evaluation of the reasons underpinning the requirement that an indictment for burglary include an allegation identifying the individual or entity in possession and use of the premises at the time of the offense, we are persuaded that no cognizable prejudice arose from what was arguably a variance between the indictment and proof.

*Affirmed.*